UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIMBERLY K. GONZALEZ,

    Plaintiff,

    v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Defendant.
_____/

No. C 06-7024 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The parties' cross-motions for summary judgment came on for hearing before this court on April 23, 2008. Plaintiff Kimberly Gonzalez ("plaintiff"), appeared via telephone through her counsel, Julian Baum. Defendants Unum Life Insurance Company of America, One Workplace L. Ferrari, and One Workplace L. Ferrari Long Term Disability Plan (collectively "defendants"), appeared via telephone through their counsel, Anna Martin. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion for summary judgment, and DENIES plaintiff's cross-motion for summary judgment, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This is an ERISA case, challenging the denial of payment of long-term disability ("LTD") insurance benefits. Plaintiff is a fifty year-old female who was employed by defendant One Workplace L. Ferrari ("One Workplace") in Milpitas, California, for several years as a Delivery Scheduling Coordinator, up until May 3, 2001, when plaintiff was terminated due to corporate downsizing. While an employee, plaintiff was insured under

the One Workplace L. Ferrari Long Term Disability Plan (the "Plan"), an ERISA plan issued by defendant Unum Life Insurance Company of America ("Unum").  See Complaint, ¶ 4.

A.  Terms of the Plan

The Plan provided by One Workplace to its eligible employees contained several pertinent provisions.  Among them:

> A discretionary authority provision.  This provision is located in the Certificate Section of the Plan, stating in part that: "When making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."
>
> A claim information provision.  The provision instructing claimants that "[w]ritten notice of a claim should be sent within 30 days after the date [claimant's] disability begins.  However, [claimant] must send UNUM written proof of [the] claim no later than 90 days after [claimant's] elimination period.  If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity"
>
> A long term disability definition provision.  This section sets forth the requirements for a qualifying disability pursuant to the Plan's long term disability policy.  This provision states that a claimant is disabled "when UNUM determines that: you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."  The provision also notes that, "[a]fter 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."
>
> A provision limiting coverage for mental illness.  This provision states that "[d]isabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and d]isabilities due to mental illness have a limited pay period up to 12 months."  The provision further provides, however, that "UNUM will not apply the mental illness limitation to dementia if it is a result of: stroke; trauma; viral infection; Alzheimer's disease; or other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

See Administrative Record ("AR"), attached as Exhibit D to Declaration of Julian M. Baum ("Baum Decl."), at U/A 0059; U/A 0065; U/A 0076; U/A 0082-83.[1]

---

[1] The parties' citations to, and submission of, the administrative record in this case is confusing and disorganized.  To begin with, plaintiff never filed a Notice of Lodging of Administrative Record with the court.  Instead, plaintiff simply submitted the Declaration of Julian Baum in connection with the courtesy copy of her motion papers.  The Baum Declaration originally submitted by plaintiff contained Exhibits A-C only, all of which contain

2

B.    Background Facts

Plaintiff began her employment with One Workplace on November 1, 1990. Beginning July 1999, plaintiff began experiencing headaches, and numbness in her right hand. AR at U/A 1060. Her symptoms persisted with increasing frequency, and in December 1999, she was diagnosed with a cervical radiculopathy and signs of cervical spinal cord impingement. AR at U/A 1060. In January 2000, plaintiff underwent anterior cervical fusion surgery at C6-7, conducted by Dr. Desmond Erasmus. AR at U/A 1056-58. Plaintiff returned to work on a modified basis in July 2000. Nearly one year later, on May 3, 2001, she was laid off as a result of corporate downsizing.

On May 16, 2001, shortly after plaintiff's termination, plaintiff again consulted with Dr. Erasmus, who noted that plaintiff had subjective symptoms of permanent disability that included intermittent cervical pain and hand numbness, numbness and burning of the shoulders, and constant pain around the right iliac crest. AR at U/A 0777-78. Dr. Erasmus then opined that plaintiff had lost half her pre-injury capacity for lifting, was limited to lifting 10 to 15 pounds, and was precluded from working prolonged durations of time. Id. Dr. Erasmus later followed up on his May 16 diagnosis with a November 2001 letter indicating that, in his opinion and based on his prior May 16 medical report, plaintiff was also qualified to return to work in the position of delivery supervisor. AR at U/A 1062.

In October 2001, plaintiff switched her treating physician to Dr. David Padgett. On November 15, 2001, Dr. Padgett examined plaintiff and conducted electrodiagnostic testing of her left upper extremity. AR at U/A 0217. Dr. Padgett reported an updated diagnosis of plaintiff that included an old C7 radiculopathy on the right side, a reported C6-7

---

pages from an underlying record that are Bates labeled "KKG." While the court at first thought these pages were the administrative record, defendant's briefing cites to entirely different documents labeled "U/A." Defendant's papers note the discrepancy between the parties' citations, further note that the proper administrative record contains the "U/A" designations, and then clarify that the administrative record – with the original U/A designation – is attached as Exhibit D to plaintiff's Baum Declaration (a copy of which plaintiff had originally failed to submit to chambers). After receiving defendant's clarification, the court then instructed plaintiff to re-submit proper copies of Exhibit D to the court, which plaintiff did. All citations herein to the administrative record contain the "U/A" designation.

radiculopathy on the left "that appears to have resolved electrically," and repetitive strain injury/thoracic outlet syndrome in connection with the left upper extremity and "probably" the right upper extremity as well. AR at U/A 0217-218. Dr. Padgett also opined that plaintiff should be considered a qualified injured worker, and trained to do other lines of work "which do not involve heavy keyboard use throughout the day." Id. at 0218. Dr. Padgett specifically found that plaintiff "would be able to key[board] 15 minutes an hour." Id.

In February 2002, plaintiff consulted with Dr. Steven Feinberg, a Board certified physician in physical medicine and rehabilitation. After examining plaintiff, Dr. Feinberg reported that plaintiff's subjective disability factors included "slight to moderate pain" and that plaintiff's objective disability factors included a "bilateral grip strength decrement" and "mild left thoracic outlet syndrome." AR at U/A 1103-13. Dr. Feinberg opined that plaintiff had a disability "equivalent to precluding heavy work." AR at U/A 1112. Dr. Feinberg also noted that plaintiff's work status appeared "somewhat clouded," since plaintiff's job description for Delivery Scheduling Coordinator was not particularly heavy in nature and something that plaintiff should be able to do, in contrast to plaintiff's description of her job, which differed from the stated description of Delivery Scheduling Coordinator. AR at U/A 1112. Dr. Feinberg requested a detailed description of plaintiff's prior job duties. Id.

Dr. Feinberg issued a supplemental report on November 4, 2002, after reviewing a formal job description that had been provided to him pertaining to plaintiff's prior position as Scheduling Coordinator. Dr. Feinberg's updated report opined that plaintiff could perform the essential functions of the job of a Scheduling Coordinator, with proper accommodations. AR at U/A 0725.

Dr. Padgett, plaintiff's treating physician, saw plaintiff on January 8, 2003. Dr. Padgett thereafter opined that plaintiff could not return to work without significant ergonomic modifications and without biofeedback training. AR at U/A 718.

A few months later, on May 16, 2003, Dr. Feinberg performed another examination

4

of plaintiff. Dr. Feinberg noted that plaintiff continued to be symptomatic in residual cervical radiculopathy and mild thoracic outlet syndrome. However, Dr. Feinberg also added that a psychological evaluation with testing was in order, as plaintiff had so many diffuse complaints that the role of psychogenic factors needed to be elucidated. AR at U/A 676-83.

To that end, on July 23, 2003, plaintiff consulted with Dr. Clyde Burch, a clinical psychologist, who diagnosed plaintiff with pain, depression and anxiety disorders. AR at U/A 1969-73. Dr. Burch specifically noted that there was a "strong likelihood of physiological signs of psychological distress (i.e. somatization)" as well as "a strong possibility of symptom magnification due to some psychological dysfunction." AR at U/A 1971.

In January 2004, plaintiff was seen by Dr. Louis Messina, a vascular surgeon. Dr. Messina referred plaintiff to Dr. Berven for an orthopedic surgery consultation. Dr. Berven is an expert in cervical spine disease and thoracic outlet syndrome. Dr. Messina further stated that he would not make any recommendations until he received Dr. Berven's evaluation and recommendations. AR at U/A 1709-10. Dr. Berven examined plaintiff on August 16, 2004, in which mild to normal findings were noted. AR at U/A 1705-08. Dr. Berven stated that plaintiff walked without pain, that her strength was found to be a 5 out of possible 5, but that plaintiff did suffer from a decreased range of motion in the neck, as well as a slight dullness over the left forearm. Id. at U/A 1707-08.

Plaintiff did not return to Dr. Messina for follow up treatment after her consultation with Dr. Berven. Nor did she return for follow-up treatment with Dr. Berven. Rather, on October 19, 2004, Dr. Feinberg re-examined plaintiff. Dr. Feinberg deferred his opinion to those of Drs. Messina and Berven, but nonetheless opined that plaintiff may not be a good surgical candidate because of a "psychological comorbidity." AR at U/A 1125.

Beginning in 2004, however, plaintiff's psychological symptoms had improved. On May 3, 2004, for example, Dr. Burch noted decreased anxiety and depression and increases in plaintiff's activity levels. AR at U/A 1967.

Several months later, in January 2005, plaintiff again visited Dr. Burch, who noted that she had elevated somatization, depression and anxiety. AR at U/A 1961. On February 4, 2005, Dr. Padgett recommended that plaintiff participate in a pain management program, which she did from July 2005 to September 2005. AR at U/A 293; 836-37. On December 19, 2005, Dr. Burch reported that plaintiff appeared to have benefitted greatly from the program, and that while continuing to experience difficulties, plaintiff had done a better job of managing her pain symptoms and associated mood disturbance. AR at U/A 1020.

C.    Social Security Administration ("SSA") Proceedings

Plaintiff filed an application for disability benefits with the SSA on March 24, 2003, alleging disability beginning September 24, 1999. The application was initially denied, but ultimately granted after a hearing before the Administrative Law Judge on February 2, 2005.

On July 11, 2003, medical doctors retained by the SSA to evaluate plaintiff's physical condition, Dr. Shashi Mathur and Dr. John Chokatos, both opined that plaintiff was not physically disabled. They diagnosed plaintiff's condition as post surgical fusion, cervical radiculopathy, and left thoracic outlet syndrome. They also found plaintiff capable of lifting up to 20 pounds occasionally and up to 10 pounds frequently (as well as being able to stand and walk for 6 hours a day, and to sit for 6 hours a day). AR at U/A 2143-2150.

Plaintiff's own treating physical, Dr. Padgett, completed a medical statement for the SSA and on August 8, 2003, opined that plaintiff could sit less than 6 hours in a work day, and could lift and carry up to 10 pounds occasionally, less than 10 pounds frequently, and was able to stand and walk at least 2 hours a day, with the occasional balancing, stooping and kneeling. AR at U/A 2168-2170. Dr. H.K. Haveliwala, however, reviewed Dr. Padgett's statement on the SSA's behalf and found Dr. Padgett's recommendation too restrictive, and not fully supported by the objective findings and other evidence. He therefore adopted Dr.

Mathur's prior opinion. AR at U/A 2153.

The SSA also had plaintiff undergo a psychological evaluation, by Dr. Vicky Campagna, a clinical psychologist, and Drs. Ida Hilliard and Danillo Lucilla, who reviewed plaintiff's claim from a psychiatric standpoint. Dr. Campagna found that from a psychological standpoint, plaintiff's ability to function in a work related setting was not impaired. Dr. Hilliard diagnosed plaintiff with affected disorder, but found that her impairment was not severe. AR at U/A 2137-42.

After the February 2, 2005 hearing, the ALJ found that plaintiff had been diagnosed with cervical disc disease status post discectomy, left thoracic outlet syndrome, depressive disorder and somatization disorder. AR at U/A 397. The ALJ further concluded that plaintiff was unable to meet the demands of competitive remunerative work on a sustained and consistent basis, or any other exertional level due to the combination of plaintiff's physical and mental impairments. AR at U/A 396.

D.  Unum Claim History

Plaintiff applied for disability insurance benefits under the Plan in March 2005, claiming a disability onset date of May 2, 2001. By letter dated September 21, 2005, Unum denied payment of plaintiff's disability claim, on grounds that the evidence in the record supported only the fact that plaintiff stopped working because she was laid off, and that the record supported an onset disability date of October 15, 2001.

Plaintiff subsequently appealed Unum's denial on March 6, 2006. In connection with that appeal, plaintiff supplied many medical and clinical records and reports, statements from plaintiff's former co-workers, and the decision from the SSA awarding plaintiff disability benefits. For example, plaintiff provided Unum with a report from Dr. Robert Hines dated June 3, 2006, in which Dr. Hines opined on plaintiff's past physical difficulties. Dr. Hines specifically opined that on May 2001, plaintiff was struggling to perform a very modified and familiar job, and that she was not able to perform the duties of a full-time occupation without such modifications. AR at U/A 1238. On July 14, 2006, Dr. Feinberg prepared his

own report, in which he concluded that plaintiff was medically fit for vocational rehabilitation. Id. at U/A 1518-31. And on September 8, 2006, Dr. Padgett also submitted a letter in which he stated that it was unlikely that plaintiff could continue doing her job as of May 2001, in view of the limitations that plaintiff had received from Dr. Erasmus back in 2001. AR at U/A 1062. In addition to this information, Unum also obtained a copy of the SSA's complete case file.

Unum assigned plaintiff's appeal to its Appeals Consultant, Ms. Mary Spugnardi. Ms. Spugnardi had Unum's staff prepare a medical response from its senior clinical consultant, Mr. David Frank. Unum also requested review of plaintiff's file by Dr. Peter Brown, a certified psychiatrist. Dr. Brown opined on August 21, 2006, that there was reasonable support for a chronic psychiatric condition, and that the available information suggests that the psychiatric condition was of a moderate to severe level between mid 2003 and mid 2004, and of mild to moderate severity from that point through to the present. AR at U/A 1737-38.

Finally, Unum requested a review from Dr. Andrew Krouskop, a certified rehabilitation doctor. Dr. Krouskop was tasked with reviewing and analyzing plaintiff's medical information from a physical standpoint. Dr. Krouskop noted that plaintiff had been diagnosed with cervical degenerative disc disease, cervical radiculopathy and possible left thoracic outlet syndrome. AR at U/A 1784-94. He concluded that the clinical findings supported the fact that plaintiff was disabled during her recovery from her January 27, 2000 initial surgery, until her return to work on July 10, 2000. Dr. Krouskop also concluded that, as of May 2001, it was his opinion that plaintiff would have been able to sit a total of 6 hours in an 8 hour session, in 30 and 45 minute intervals, stand and walk on a frequent basis, and lift up to 15 pounds. Id. at U/A 1793. He also concluded that the information in the record did not support a finding that plaintiff's presentation of chronic pain was so severe as to preclude her from work capacity during the time from May 2001 to 2003. This conclusion was based on: Dr. Feinberg's opinion that plaintiff could have continued her

8

modified job had she not been laid off; that plaintiff was attending school for 6 hours a day in February 2002; Dr. Burch's conclusion that plaintiff's symptoms were suggestive of symptom magnification; and plaintiff's use of only anti-inflammatory drugs and Darvocet for pain control. Id.

On November 21, 2006, Dr. Krouskop amended his opinion as to plaintiff's lifting restrictions, based on receipt of plaintiff's file from the SSA. Dr. Krouskop noted that, based on Dr. Mathur's report submitted to the SSA July 11, 2003, Dr. Krouskop could state with reasonable certainty that, as of July 11, plaintiff had a lifting restriction of 20 pounds on an occasional basis. AR at U/A 2524. Prior to that date, the above-noted 15 pound restriction remained the same.

Unum also requested that a vocational analysis be performed based on the restrictions and limitations for plaintiff that were deemed reasonable, based upon the foregoing reviews. Mr. Richard Byard performed this vocational analysis, and concluded that plaintiff was suitable for alternate gainful occupations, although she was precluded from performing her usual occupation.

Unum issued its decision post-appeal on February 7, 2007. AR 2601-19. Unum determined that plaintiff had experienced two distinct periods of disability, representing separate claims. First, Unum determined that the first period of disability lasted from January 27, 2000 until July 27, 2000. This period corresponded with plaintiff's absence from work due to her cervical surgery. Second, Unum determined that plaintiff was disabled again when she was laid off on May 3, 2001, since she could not, in Mr. Byard's opinion, perform her usual occupation duties. The Plan sets forth a twenty-four month disability period, which Unum paid through July 28, 2003. Unum also extended benefits for an additional 12 month period, from July 28, 2003 until July 27, 2004, based on Unum's conclusion that, as of July 2003, plaintiff's disability was due to a combination of both physical and psychological factors.

E.     Procedural History

9

Plaintiff filed the instant complaint challenging Unum's denial of her LTD benefits on November 9, 2006. Plaintiff asserts three causes of action against Unum: (1) for benefits wrongfully denied pursuant to ERISA; (2) for breach of fiduciary duty pursuant to ERISA; and (3) for statutory penalties.

The parties' cross-motions for summary judgment are now before the court.

## DISCUSSION AND ANALYSIS

Ordinarily, summary judgment is appropriate if the pleadings and materials demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P.56(c). ERISA actions challenging a denial of benefits, however, require a slightly different analysis. It is well-established that a challenge to an ERISA plan's denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is reviewed de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Aetna Health, Inc. v. Davila, 542 U.S. 200, 210 (2004); Johnson v. Buckley, 356 F.3d 1067, 1075 (9th Cir.2004). When it is shown that the administrator has such discretion, the court will apply an abuse of discretion standard of review. See Firestone Tire, 489 U.S. at 115; Jebian v. Hewlett Packard Co. Employee Benefits Organization Income Protection Plan, 349 F.3d 1098, 1102-03 (9th Cir.2003). And "[w]hen the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." See Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir.1999).[2]

---

[2] Preliminarily, it should be noted that plaintiff attempts to make much of the fact that plaintiff is moving for judgment by the court pursuant to FRCP 52, rather than for summary judgment. According to plaintiff, a motion for judgment by the court was the procedure established by the Ninth Circuit in Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999). Plaintiff asserts that under this procedure, unlike with cross-motions for summary judgment, the court weighs the evidence and determines disputed questions of fact. In fact, however, there is nothing in Kearney that makes plaintiff's motion for judgment by the court subject to

10

Here, plaintiff asks that the court review Unum's denial of his claim for LTD benefits de novo, find that plaintiff has been disabled under the Plan from July 2003 through the present time, and enter judgment in plaintiff's favor directing defendant to pay all unpaid disability insurance benefits from July 2004 to the present. Defendants, naturally, request that the court review the denial of benefits under the abuse of discretion standard, find that Unum's decision to discontinue benefits as of July 2004 due to application of the mental illness limitation was reasonable and supported by the administrative record, and deny plaintiff's request for benefits. Thus, the parties raise, and the court must decide, two basic issues: (1) the threshold question whether the court should review plaintiff's complaint de novo, or under an abuse of discretion review standard; and (2) whether Unum properly applied the mental illness limitation.

1.   Proper Standard of Review

As noted above, a decision whether to apply de novo review or an abuse of discretion standard depends on the wording of the Plan itself. As the Ninth Circuit recently held in Abatie v. Alta Health & Life Ins. Co., "for a Plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the Plan must unambiguously provide discretion to the administrator." See 458 F.3d 955, 963-64 (9th Cir. 2006).

Here, the Plan unambiguously confers discretionary authority on Unum.[3] Specifically, the Certificate Section of Unum's 2001 Group Insurance Policy states: "When making a benefit determination under the policy, UNUM has discretionary authority to

---

any type of heightened legal standards. Kearney only says that the district court may try ERISA cases challenging a denial of benefits on the administrative record before it. See id. at 1095, fn. 4.

[3]  The court was initially confused as to the identity of the Plan Administrator. Plaintiff's complaint identifies One Workplace as the Plan Administrator, while the parties' briefing continually refers to Unum as the Plan Administrator. At the hearing on the motion, however, the parties made clear that One Workplace is identified as the Plan Administrator, but Unum is the Plan Fiduciary who actually administers the claims.

11

determine your eligibility for benefits and to interpret the terms and provisions of the policy." AR at U/A 0059. Under the standards enunciated in Abatie, this language constitutes a grant of discretionary authority on Unum. See 458 F. 3d at 963 (Plan at issue stated that "[t]he responsibility for full and final determinations of eligibility for benefits; interpretation of terms; [and] determinations of claims ... rests exclusively with Plan administrator"). For as in Abatie, where the Ninth Circuit noted that Plan language "granting the power to interpret Plan terms and to make final benefits determinations confers discretion on the Plan administrator," the Plan here also grants Unum the authority to "interpret" the Plan terms and to "determine [] eligibility for benefits." See id.; see also AR at U/A 0059.

Seeking to avoid this conclusion, plaintiff argues that Unum has failed to authenticate the Certificate Section of the Plan in which Unum's discretionary authority is discussed. Plaintiff also notes that the Certificate Section, by its own terms, states that the certificate of coverage "does not apply unless this space is covered by a sticker indicating the employee's name, policy number and effective date of coverage." See id. Yet Unum has failed to submit any copy of the Plan showing the requisite sticker indicating plaintiff's name, number, and date of coverage. Accordingly, asserts plaintiff, the Certificate Section is void, as is the discretionary clause contained within it.

These arguments are unsuccessful. First, with respect to plaintiff's authentication argument, Unum has successfully rebutted plaintiff's challenge by submitting the declarations of Jeffrey Crocker (Executive Director of Human Resources for One Workplace) and Mary Spugnardi (Appeals Consultant for Unum), both of whom properly authenticate the 2001 Plan at issue, including the Certificate Section generally. See, e.g., Crocker Decl., ¶ 2, Ex. A at U/A 0065. Second, with respect to the purported absence of the necessary sticker, plaintiff correctly notes that the Certificate Section states that it does not apply unless a sticker with plaintiff's name, number and date of coverage is attached. Id. Unum has, moreover, failed to point to an executed copy of the Plan, with sticker, as proof that it was given to plaintiff. See id. However, plaintiff does not dispute that she *was*,

12

in fact, covered by the Plan as of 2001 (and therefore, was covered by the Certificate Section included in the Plan). Indeed, it is that coverage which confers standing on plaintiff to sue for the very benefits provided in the Plan. Furthermore, plaintiff has not submitted any evidence that she did *not* receive the Plan or its Certificate Section with sticker included. These facts, combined with Mr. Crocker's testimony that, on information and belief, "[plaintiff] was given a Copy of the Certificate of Coverage, with a sticker placed on the first page that identified [plaintiff], the policy number and effective date of coverage," preclude a dispute of material fact on the question whether plaintiff was, in fact, covered by either the 2001 Plan at issue, or the Certificate Section containing the pertinent discretionary language discussed above.

In sum, therefore, the court concludes that the discretionary language conferred in the Certificate Section, and plaintiff's coverage pursuant to that Certificate Section, is not in dispute. Under the terms of the Plan, discretionary authority is vested in Unum, and the abuse of discretion standard of review applies.

Pursuant to this standard of review, the issue before the court is not whether Unum reached the "correct" decision; the issue is whether there is substantial evidence in the record to support Unum's decision. See Snow v. Standard Ins. Co., 87 F.3d 327, 331-32 (9th Cir.1996)(decision is supported by "substantial evidence" where there is relevant evidence that reasonable minds might accept as adequate to support conclusion, even if two inconsistent conclusions can be drawn from evidence), overruled on other grounds, Kearny v. Standard Ins. Co., 175 F.3d 1084 (9th Cir .1999). Even decisions directly contrary to evidence in the record may not necessarily amount to an abuse of discretion. Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1473 (9th Cir.1993). Rather, an ERISA administrator abuses its discretion only if it renders a decision without explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. See Bendixen, 185 F.3d at 944; Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323-24 (9th Cir.1995); Boyd v. Bert Bell/Pete Rozelle

NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir.2005)(the district court should uphold the decision of an ERISA plan administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith").

### 2. Mental Illness Limitation

Having determined the applicable standard of review, the court turns to the heart of the parties' dispute: whether Unum properly applied a mental illness limitation to plaintiff's disability claim. Specifically, plaintiff takes issue with Unum's determination that plaintiff was disabled as a result of her physical ailments until July 27, 2003, and that thereafter, her disability was a result of a combination of plaintiff's physical ailments and mental ailments. Based on this determination, Unum applied a 12-month mental illness limitation to plaintiff's disability claim beginning July 27, 2003, and for that reason, stopped all payments to plaintiff as of July 27, 2004.

The mental illness limitation contained in the Plan states that "[d]isabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 12 months." AR at U/A 0082-83. The Plan further defines mental illness to mean: "a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment." Id. Finally, the Plan describes the circumstances under which the mental illness limitation will *not* be applied: "Unum will not apply the mental illness limitation to dementia if it is a result of: stroke; trauma; viral infection; Alzheimer's disease; or other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment." Id.

According to plaintiff, Unum's decision to deny continuing benefits based on the mental illness limitation contained in the Plan is clearly erroneous for three reasons: (1) the

14

Ninth Circuit has held that where an ERISA plan limits benefits for disabilities due to mental illness, that limitation cannot be applied, as was done here, to disabilities that result from a combination of physical and mental medical conditions; (2) Unum improperly failed to credit the conclusions of plaintiff's physicians; and (3) it was an abuse of discretion for Unum to deny benefits without making an adequate investigation of any conflicts between the opinions of different physicians.

Beginning with the first issue, plaintiff relies on two Ninth Circuit authorities for the proposition that an ERISA policy's mental illness limitation cannot, as a matter of law, be applied to a disability claim that stems from a combination of both physical and mental attributes. See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 942-43 (9th Cir. 1995); Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993).

In Patterson, the Ninth Circuit considered an insurer's application of a two-year mental illness limitation to a plaintiff's claim of total disability due to headaches. The Ninth Circuit began by noting that the plan in question there limited benefits for any disability "caused by or resulting from ... mental, nervous or emotional disorders of any type." See 11 F.3d at 950. However, the plan did not define the term "mental disorder" or otherwise offer illustrations of conditions that were excluded or included. See id. The court concluded that the term "mental disorder" was therefore ambiguous, since it did not specify whether a disability is to be classified as "mental" by looking to the cause of the disability, or to its symptoms. Id. Furthermore, the plan did not make clear whether a disability qualifies as a "mental disorder" when it results from a combination of physical and mental factors. Id. Accordingly, the Ninth Circuit resolved the ambiguity in plaintiff's favor, and held that plaintiff was not within the limitation for mental disorders if his disability was caused in any part by headaches (i.e., a physical cause, as opposed to a mental cause, such as depression). The Ninth Circuit then remanded to the district court with instructions to remand to the plan administrator for a factual determination, based on the medical

1  evidence in the record, as to the cause of Patterson's total disability.

2  Patterson was followed by the Ninth Circuit's decision in Mongeluzo. In Mongeluzo, plaintiff was an employee suffering from severe fatigue, headaches, back and shoulder pain, and ulcerative colitis. He claimed benefits under an ERISA plan that had a two-year limitation on claims for disabilities that were caused by a "mental illness" or a "functional nervous disorder." See 46 F.3d at 940 (the relevant language in the plan at issue stated that payment would not be made "if the disability is caused by mental illness or functional nervous disorder"). The Ninth Circuit once again found the plan language ambiguous, because neither the term "mental illness" nor the term "functional nervous disorder" were defined in the plan. The Ninth Circuit also held that the same considerations that governed the court's holding in Patterson, applied in Mongeluzo: namely, the fact that the plan did not specify whether a disability is to be classified as mental by looking to the cause of the disability or to its symptoms, as well as the fact that the plan did not make clear whether a disability qualified as a mental disorder when it results from a combination of physical and mental factors. See id. at 942-43. As such, and because the plan's terms were ambiguous, the Ninth Circuit once again found that the terms had to be interpreted in plaintiff's favor, and if either a cause or a symptom of the disease was physical and caused the disability in whole or in part, then benefits were payable. The court then reversed the district court's grant of summary judgment in the insurer's favor. Id. at 943.

Looking to these cases as controlling authority, the real issue for the court here is whether Unum's Plan is similarly ambiguous in its definition of "mental illness." Plaintiff asserts that it is, because the Plan is ambiguous as to whether a disability may qualify as a mental illness when it is caused by a combination of both physical and mental aspects. Unum, by contrast, contends that no such ambiguity is present, since the policy language here is much more express than the policy language at issue in either Patterson or Mongeluzo.

While the court finds the question a close one, it ultimately concludes that

1  defendants have the more persuasive argument. Patterson and Mongeluzo are
2  distinguishable. In both cases, no express definition for the terms "mental illness" or
3  "mental disorder" was included in the plans at issue, and the Ninth Circuit found an
4  ambiguity present on the basis that, as such, it was impossible to tell whether a disability
5  was to be classified as mental based on symptoms or cause, and it was furthermore
6  impossible to tell whether a disability is mental if it results from both physical and mental
7  factors. Here, however, the Plan is more detailed. As Unum notes, the Plan expressly
8  defines "mental illness" as a "psychiatric or psychological condition" that is present,
9  "*regardless of cause.*" AR U/A at 0082-83. The Plan further provides illustrative examples
10 of types of "mental illness," such as depression, manic depressive or bipolar illness,
11 anxiety, personality disorders, etc. See id. Accordingly, the Plan should be read as stating
12 that psychiatric or psychological conditions, such as anxiety or depression, qualify as
13 mental illnesses regardless how they are caused – i.e., whether through physical or mental
14 means. In view of this reading, the mental illness limitation contained in the Plan is
15 dissimilar from the limitations previously considered by the Ninth Circuit, and its application
16 by Unum cannot, as a matter of law, be considered clearly erroneous here.

17  As to whether Unum proper applied the limitation to plaintiff's claim, however, this is
18 a separate issue that goes to the last two arguments raised by plaintiff – i.e, whether Unum
19 improperly failed to credit the conclusions of plaintiff's physicians, and whether Unum failed
20 to make an adequate investigation of any conflicts between the opinions of different
21 physicians.

22  In support of its determination, Unum submits the following: that as of July 11, 2003,
23 plaintiff was physically capable of performing her own occupation; that only after Unum
24 determined that plaintiff was not physically disabled as of July 11, 2003, did Unum then
25 apply the mental limitation beginning July 27, 2003; and that this decision was based on a
26 determination that as of July 27, 2003, it was the *combination* of physical and mental
27 factors that made plaintiff disabled, not just the physical.

28

17

Unum based this determination, in turn, on the opinions of numerous doctors, to wit: on July 17, 2003, plaintiff underwent a psychological evaluation at the SSA's request, in connection with her SSA request for disability benefits. Plaintiff saw Drs. Vicky Campagna, a clinical psychologist, and Ida Hilliard and Danillo Lucilla, psychiatrists. Dr. Hilliard diagnosed plaintiff with affective disorder, but found that her impairment was not severe. AR at U/A 2137-2142. Dr. Campagna also found that plaintiff's ability to function in a work related setting was not impaired. AR at U/A 2187. Then, on July 28, 2003, plaintiff consulted with Dr. Clyde Burch, a clinical psychologist, who diagnosed plaintiff with pain, depression and anxiety disorders, and noted that plaintiff exhibited a "strong possibility of symptom magnification due to psychological dysfunction." AR at U/A 1971. Over one year later, on October 19, 2004, Dr. Feinberg again examined plaintiff, and while he deferred his opinion to two other doctors, he opined that plaintiff may not be a good surgical candidate because of a "psychological comorbidity." AR at U/A 1125. Finally, when Unum's clinical staff reviewed plaintiff's medical file, Dr. Peter Brown, a Board Certified Psychiatrist, provided an opinion that there was reasonable support for a chronic psychiatric condition on plaintiff's part. AR at U/A 1737. Significantly, Dr. Brown also noted that the fact that plaintiff had filed her claim so late that it made it difficult for Unum to conduct a reasonable evaluation of a number of important factors concerning the severity and chronicity of plaintiff's symptoms, including job specific issues, her failure to use psychotropic medications beyond a starting dose, etc. AR U/A 1737-38.

In response to these medical opinions proffered by Unum, plaintiff states only that she had the observations and opinions of her treating physician Dr. Padgett, as well as Dr. Hines and Dr. Feinberg, all of whom characterize plaintiff's "overwhelming and disabling physical infirmities." See Pl. Mot. Judg. at 11-12. However, while plaintiff is correct that there is evidence in the record as to plaintiff's physical disabilities, plaintiff does not specifically highlight the evidence that would support a conclusion as to her physical disabilities post July 2003. Indeed, the bulk of the evidence relied on by plaintiff appears to

have taken place prior to that time frame.  More importantly, plaintiff fails to rebut defendant's showing in the record with any citations that specifically contradict Unum's ultimate finding that plaintiff was suffering from *psychological* factors as of July 2003.[4]

In sum, Unum's decision that plaintiff was suffering from psychological factors in addition to physical factors, and that it was the combination of these two that triggered her disability after July 2003 – thereby triggering the mental illness limitation – was reasonable. In view of the supporting evidence, and plaintiff's lack of direct contradictory evidence, the court cannot say that it was a product of arbitrariness or capriciousness.  As such, summary judgment is hereby GRANTED in defendants' favor on this ground, and plaintiff's cross-motion is DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant's motion for summary judgment, and DENIES plaintiff's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 28, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[4] Unum has additionally argued that, to the extent plaintiff complains of Unum's failure to investigate the conflicts in physician's testimony, Unum was significantly prejudiced in doing so by plaintiff's late filing of her claim.  This argument is persuasive.  As Dr. Brown noted when reviewing plaintiff's files, the late filing made it impossible for Unum to independently assess plaintiff's medical status as of the time she was purportedly disabled. Rather, Unum had to rely on its own investigation, based on others' contemporaneous assessments.  As such, plaintiff cannot rely on the argument that defendant failed to resolve conflicts in the earlier physician's opinions, since plaintiff herself made it more difficult for Unum to do so by filing late.  Moreover, as Unum points out, after the appeal process was over, Unum invited plaintiff and her physicians to submit more evidence to assist Unum in further assessing her claim, and this was never done.